**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ZAIRA S. LLANCAN AZOCAR, | Case № 2:21-cv-02969-ODW (SKx) |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| DELTA AIR LINES, INC.; GRUPO AEROMEXICO; AEROVIAS DE MEXICO, S.A. DE C.V. dba Aeromexico Airlines; and DOES 1 through 50, inclusive, | **MOTION TO DISMISS [25]** |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Zaira S. Llancan Azocar fell while walking between terminals at Los Angeles International Airport ("LAX") after an agent of Defendant Delta Airlines, Inc. allegedly refused to provide wheelchair assistance.  She sues Defendants[1] Delta and Aerovias de Mexico, S.A. de C.V. for, among other things, violation of the Unruh Civil Rights Act ("Unruh") and California Disabled Persons Act ("CDPA").  Delta moves to dismiss these claims as preempted and insufficiently pleaded.  (Mot. Dismiss ("Mot."), ECF No. 25.)  For the reasons below, the Court **GRANTS** Delta's Motion.[2]

---

[1] Azocar voluntarily dismissed Defendant Grupo Aeromexico.  (Notice, ECF No. 42.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.       BACKGROUND[3]

Azocar is a seventy-eight-year-old California resident who is disabled due to various ailments, including blindness.  (Notice of Removal Ex. C ("Second Am. Compl." or "SAC") ¶¶ 1, 19, ECF No. 1-3.)  Azocar booked airline tickets for flights on Aeromexico from Santiago, Chile to LAX, and on Delta from LAX to Salt Lake City, Utah.  (SAC ¶¶ 20–21.)  Wheelchair assistance was requested for moving from one airport terminal and gate to another, both when she booked the tickets and also when she arrived at each respective airport.  (*See* SAC ¶ 22.)

Upon arriving at LAX from Santiago, Azocar received wheelchair assistance in getting from the arriving Aeromexico gate to the connecting Delta departure gate.  (SAC ¶ 26.)  She was then left unattended for over an hour at the Delta gate in Terminal 2 before learning that her departure gate had been changed to a gate in Terminal 3.  (SAC ¶ 27.)  No one came to transport her to the new departure gate and Azocar requested wheelchair assistance to the new gate from a Delta agent.  (SAC ¶¶ 27–28.)  The Delta agent refused and "instead told her to hurry so as to not miss her flight."  (SAC ¶ 29.)  When Azocar attempted to walk to the new gate, she fell and sustained severe injuries.  (SAC ¶ 30.)

Azocar sued Defendants, asserting claims under California law for (1) negligence, (2) violation of Unruh; (3) violation of CDPA, and (4) negligent hiring, supervision, or retention of employee.  (SAC ¶¶ 38–62.)  In addition to seeking general and special damages pursuant to the negligence claims, Azocar also seeks statutory and treble damages and attorneys' fees pursuant to Unruh and CDPA.  (SAC at 10–11.)  Delta now moves to dismiss the Unruh and CDPA claims and their associated statutory remedies under Federal Rule of Civil Procedure

---

[3] For purposes of this Motion, the Court takes Azocar's well-pleaded allegations as true.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

1   ("Rule") 12(b)(6).  (Mot. 2–3, 5.)  The Motion is fully briefed.  (*See* Opp'n to Mot.
2   ("Opp'n"), ECF No. 31; Reply ISO Mot., ECF No. 34.[4])

3                               **III.      LEGAL STANDARD**

4           A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable
5   legal theory or insufficient facts pleaded to support an otherwise cognizable legal
6   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To
7   survive a dismissal motion, a complaint need only satisfy the minimal notice pleading
8   requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v.*
9   *Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to
10  raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,
11  550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual
12  matter, accepted as true, to state a claim to relief that is plausible on its face."
13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

14          The determination of whether a complaint satisfies the plausibility standard is a
15  "context-specific task that requires the reviewing court to draw on its judicial
16  experience and common sense."  *Id.* at 679.  A court is generally limited to the
17  pleadings and must construe all "factual allegations set forth in the complaint . . . as
18  true and . . . in the light most favorable" to the plaintiff.  *Lee*, 250 F.3d at 679.
19  However, a court need not blindly accept conclusory allegations, unwarranted
20  deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*,
21  266 F.3d 979, 988 (9th Cir. 2001).

22                               **IV.      DISCUSSION**

23          Delta moves to dismiss Azocar's Unruh and CDPA claims and related statutory
24  remedies as impliedly field preempted by the Air Carrier Access Act ("ACAA"),

25

26  ---
    [4] After the Court took the Motion under submission, Delta submitted a Notice of Decision, attaching
27  a recent decision from the Superior Court of California.  (Notice, ECF No. 36.)  Azocar then filed
    what is effectively a surresponse to Delta's Motion, consisting entirely of additional argument.
28  (Reply to Notice, ECF No. 37.)  Surresponses are not permitted absent prior written order of the
    Court.  C.D. Cal. L.R. 7-10.  Therefore, the Court does not consider Azocar's improper surresponse.

49 U.S.C. § 41705, which is an amendment to the Federal Aviation Act ("FAA"). (Mot. 2–3, 6–10.) Delta also contends these claims are insufficiently pleaded. (Mot. 2–3, 11–13.)

**A.    Preemption**

The parties agree that the ACAA impliedly field preempts state law claims that concern aiding disabled airline passengers in moving through airports. (*See* Mot. 3, 7–10; Opp'n 3.) They disagree, however, on the scope of this preemption. (*See* Reply 2.) Delta contends the ACAA entirely preempts the Unruh and CDPA claims, relying primarily on *National Federation of the Blind v. United Air Lines, Inc.*, 813 F.3d 718 (9th Cir. 2016). (Mot. 7–10.) In contrast, Azocar contends the scope of ACAA preemption extends only to the state standard of care element of these claims, permittng her to maintain the claims under the ACAA standard of care; Azocar relies primarily on *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995 (9th Cir. 2013). (Opp'n 4–6.) The Court's inquiry is thus whether ACAA preemption extends to the entirety of the Unruh and CDPA claims or to only the standard of care.

Federal law may preempt state law in three ways: expressly, impliedly by conflict, and impliedly by occupying the field. *Gilstrap*, 709 F.3d at 1003. As this case concerns only implied field preemption, (*see* Mot. 3; Opp'n 4–5), the Court focuses accordingly. "Federal law impliedly preempts state law when the state law 'regulates conduct in a field that Congress intended the Government to occupy exclusively.'" *Lagomarsino v. Delta Airlines, Inc.*, No. CV 19-3131-DMG (GJSx), 2020 WL 1955314, at *2 (C.D. Cal. Feb. 7, 2020) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). "Courts should 'more readily' infer preemption 'in the field of aviation' than in other fields because aviation 'is an area of law where the federal interest is dominant.'" *Id.* (quoting *Nat'l Fed'n*, 813 F.3d at 724). The Ninth Circuit has held that the ACAA and its regulations occupy the field of nondiscriminatory treatment of airline passengers, and therefore impliedly preempt state statutory claims, *Nat'l Fed'n*, 813 F.3d at 731–33, 740, and elements of state tort law claims, *Gilstrap*,

709 F.3d at 1007, when the claims concern providing disabled passengers with assistance in moving through airports.

In *Gilstrap*, the defendant airline failed to provide a disabled plaintiff with wheelchair assistance in an airport and the plaintiff brought California tort claims, including for negligence and negligent misrepresentation. *Id.* at 998. To evaluate whether the ACAA preempts such state law tort claims, the court established a framework under which courts first asks "whether the particular area of aviation commerce and safety implicated by the lawsuit is governed by 'pervasive federal regulations.'" *Id.* at 1006 (brackets omitted) (quoting *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 808 (9th Cir. 2009)). If so, "the scope of field preemption extends . . . to the standard of care," and "[l]ocal law still governs the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies." *Id.* (bracket omitted). Applying this test, the court in *Gilstrap* found the pervasive ACAA regulations governing assistance to disabled passengers preempted the standard of care under state tort law, but did not preempt the other elements and remedies of the tort claims. *See id.* at 1010.

The Ninth Circuit returned to the question of ACAA preemption three years later, in *National Federation*, this time with respect to claims brought under Unruh and CDPA. 813 F.3d at 723. The plaintiff in *National Federation* asserted Unruh and CDPA claims against the defendant airline because visually impaired passengers could not access the airline's check-in kiosks. *Id.* The court found that the FAA's saving clause did not preserve claims brought under "'prescriptive' state statutes" like Unruh and CDPA, which "control the primary conduct of those falling within their governance." *Id.* at 731 (brackets omitted). Ultimately, the court concluded that the ACAA pervasively and comprehensively regulates discrimination in the context of air travel, including with respect to airlines' interactions with their customers with disabilities, and therefore the Unruh and CDPA claims were entirely preempted. *Id.* at 739–40.

A district court in the Central District of California recently applied *Gilstrap* and *National Federation* to the question of ACAA preemption in a case with facts nearly identical to those here. *See Lagomarsino*, 2020 WL 1955314, at *1. In *Lagomarsino*, the plaintiff brought claims against Delta for negligent misrepresentation and violation of Unruh and CDPA, among others, after being denied wheelchair assistance in moving through an airport terminal. *Id.* The court first considered the Unruh and CDPA claims and found them analogous to the Unruh and CDPA claims in *National Federation*, and therefore impliedly preempted by the ACAA. *Id.* at *3. The court next considered the plaintiff's negligent misrepresentation claim, finding it analogous to the negligence claims in *Gilstrap*; the court thus concluded that, as in *Gilstrap*, the ACAA impliedly preempted the standard of care but not the negligent misrepresentation claim's other elements or remedies. *Id.* The court therefore dismissed the Unruh and CDPA claims as preempted, and found the negligent misrepresentation claim could proceed, but only under the federal standard of care. *Id.* at *4.

Here, Delta moves to dismiss only the Unruh and CDPA claims and their related statutory remedies and does not challenge Azocar's negligence claims. (*See* Mot.) The Court agrees with *Lagomarsino*'s treatment of the Unruh and CDPA claims as analogous to those in *National Federation* and consequently finds them preempted. The ACAA comprehensively addresses discrimination with respect to assisting disabled passengers move through airports. *Id.* at *3 (citing 14 C.F.R. §§ 382.11–25, 382.91–105). As Congress has indicated its intent to occupy this field to the exclusion of state regulation, federal law impliedly field preempts Azocar's claims under Unruh and CDPA.

Azocar argues that, under *Gilstrap*, she may apply the federal ACAA standard of care to the Unruh and CDPA claims. (*See* Opp'n 4–6.) But in *Gilstrap*, the court evaluated California tort claims, not the prescriptive statutory claims at issue here. Thus, the court in *Gilstrap* found the ACAA preempted the state tort standard of care,

but not the remaining tort law elements or remedies.  *See* 709 F.3d at 1007 ("Gilstrap may still rely on California tort law to prove the other elements of her claims—breach, causation, damages, and remedies.").  In contrast, in *National Federation*, the Ninth Circuit evaluated ACAA preemption of Unruh and CDPA claims, like Azocar asserts here, and concluded the claims were preempted.  *See Nat'l Fed'n*, 813 F.3d at 723, 740 (finding the plaintiff's Unruh and CDPA claims "impliedly field preempted under the ACAA").  The Court is thus guided by *National Federation*'s evaluation of the same statutory claims.

The Court does not find Azocar's preferred district court decision contrary. (*See* Opp'n 6 (discussing *Segalman v. Sw. Airlines, Co.*, No. 2:11-cv-01800-MCE (CKDx), 2016 WL 146196 (E.D. Cal. Jan. 13, 2016)).)  For one thing, the court in *Segalman* did not have the benefit of the Ninth Circuit's subsequent decision in *National Federation*, which specifically found Unruh and CDPA claims impliedly preempted by the ACAA.  For another, the court in *Segalman* did not adopt Azocar's position here, but rather discussed the possibility, in dicta, that *Gilstrap*'s "reasoning *suggests* that California law does provide remedies under [Unruh, CDPA], and common law of negligence in situations in which federal regulations provide the standard of care."  *See Segalman*, 2016 WL 146196, at *3 (emphasis added). However, the court in *Segalman* rested its holding on an entirely different basis, dismissing the Unruh and CDPA claims as insufficiently pleaded, s*ee id.* at *4, so its discussion of what *Gilstrap* may suggest does not persuade.

Azocar offers no precedent supporting the proposition that a plaintiff may apply the federal ACAA standard of care to state law Unruh and CDPA statutory claims. Absent such precedent, and in light of the Ninth Circuit's treatment of Unruh and CDPA claims in *National Federation*, the Court declines to extend *Gilstrap*'s holding in this way.  The Court finds Azocar's Unruh and CDPA claims and the associated remedies are impliedly field preempted by the ACAA, and therefore must be dismissed.  The basis for this conclusion applies equally to Defendant Aeromexico,

and therefore the second and third claims must be dismissed as to Aeromexico as well. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

**B.    Adequacy of Allegations**

Even were the Unruh and CDPA claims not preempted, they would still fail.

To state a claim for violation of Unruh independent of an Americans with Disabilities Act ("ADA") claim, as Azocar does here, a plaintiff must plead intentional discrimination in public accommodations. *See Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 427 (9th Cir. 2014) ("[T]he Unruh Act requires a showing of willful, affirmative misconduct to establish intentional discrimination . . . ."). However, she alleges only that the Delta agent refused to assist her and advised her to hurry.   (FAC ¶ 29.)    The only other allegation of intentional discrimination is conclusory.   (FAC ¶ 48.)   Azocar's allegations are therefore insufficient to establish intentional discrimination, *see Iqbal*, 556 U.S. at 678, and her Unruh claim fails.

To state a claim under the CDPA independent of the ADA, Azocar must plead she was denied equal access to a public space.   *See* Cal. Civ. Code § 54(a) ("Individuals with disabilities . . . have the same right as the general public to the full and free use of . . . public places.").   However, Azocar does not allege any facts suggesting that Delta denied her access to any public space.   She alleges she was left unattended at the gate for over an hour, the Delta agent refused her request for wheelchair assistance, and the Delta agent advised her to hurry so she would not miss her flight.   (FAC ¶¶ 28–29.)   As above, the Court disregards the conclusory allegation that Delta "preclude[d] [Azocar's] equal access to the airport and terminals."   *See Iqbal*, 556 U.S. at 678; (FAC ¶ 54.)   The remaining allegations are insufficient to establish that Azocar was denied equal access to any public space.   Therefore, the CDPA claim also fails.

## V.   CONCLUSION

The second cause of action for violation of Unruh and the third cause of action for violation of CDPA are preempted and inadequately pleaded.   Accordingly, the Court **GRANTS** the Motion and dismisses the second and third causes of action and the associated requests for statutory damages, treble damages, an attorneys' fees under those statutes as to all Defendants.   (ECF No. 25.)   As no amendment could cure the deficiency with respect to preemption, dismissal is with prejudice and without leave to amend.   *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**IT IS SO ORDERED.**

December 2, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**